UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARCY G. CLARK,<br><br>               Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>               Defendant. | Case No. C13-747-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Darcy G. Clark seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by (1) discounting his credibility, (2) failing to account for all of his limitations when assessing his residual functional capacity ("RFC"); and (3) failing to hold a supplemental hearing after taking post-hearing evidence. Dkt. 16 at 2.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Mr. Clark is currently 49 years old, has a GED, and has worked as a manufacturing assembler, janitor, machine operator, newsprint handler, landscape helper, general laborer, and

REPORT AND RECOMMENDATION - 1

sawyer.[1]  On December 22, 2010, he applied for benefits, alleging disability as of February 20, 2010.  Tr. 221-31.  His applications were denied initially and on reconsideration.  Tr. 136-39, 143-56.  The ALJ conducted a hearing on March 6, 2012 (Tr. 36-83), and subsequently found Mr. Clark not disabled.  Tr. 17-30.  As the Appeals Council denied Mr. Clark's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-4.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Mr. Clark had not engaged in substantial gainful activity since February 20, 2010.

**Step two:**  Mr. Clark's back disorder, arthritis/arthropathies, obesity, diabetes, vision problems, sleep apnea, depression, and anxiety are severe impairments.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**RFC:**  Mr. Clark can perform a full range of medium work with the following limitations: he can perform only frequent handling and fingering; occasional stooping, crouching, kneeling, balancing, crawling, and climbing stairs/ramps; no climbing ladders; occasional interaction with the general public, but frequent interaction with coworkers or supervisors.  He can remember, understand, and carry out simple and detailed instructions or tasks generally required by occupations with an SVP of 1 to 4.  However, his jobs tasks cannot require more than occasional depth perception.

**Steps four and five:**  Mr. Clark could perform his past work as a store's laborer.  This work does not require the performance of work-related activities precluded by his residual functional capacity.  In the alternative, even if he was unable to perform his past relevant work, he could perform the requirements of production line solder, table worker, housekeeper, and diet clerk.

Tr. 17-30.

## DISCUSSION

**A.    The ALJ Did Not Err in Discounting Mr. Clark's Credibility**

---

[1] Tr. 41, 248, 254.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

The ALJ provided a number of reasons to discount Mr. Clark's credibility, specifically (1) the fact that his most recent job ended in February 2010 because of the employer's lack of business, rather than disability, suggesting that he could have continued to work at medium exertion levels after February 2010; (2) generally normal objective findings in the medical evidence, which is inconsistent with his allegations; (3) inconsistent daily activities; and (4) some symptoms improved with treatment.  Tr. 24-26.  Mr. Clark does not directly dispute the validity of the second reason, but argues that because the other three reasons are not supported by the record, the second reason cannot alone support the ALJ's adverse credibility determination.  Dkt. 16 at 7; Dkt. 20 at 6.

**1.     Mr. Clark's Work History**

In reference to the ALJ's first reason — Mr. Clark's ability to work at a medium exertion level in his previous job until February 2010 — Mr. Clark cites evidence that he contends shows that his medical conditions worsened after his last job ended, and thus the ALJ erred in inferring that because he had previously worked at the medium level he could have continued to do so.  Dkt. 20 at 2-4.  Specifically, Mr. Clark points to evidence that he gained a significant amount of weight between 2008 and 2010, and that he complained of double vision and left knee pain and was diagnosed with diabetes in January 2011.  Dkt. 16 at 6-7.  The Commissioner counters that (1) Mr. Clark's weight gain is not specifically tied to the period after he stopped working, and thus could have occurred beforehand; (2) Mr. Clark's subjective complaints regarding vision and knee pain are not sufficient to establish that he became more impaired, especially because the objective medical evidence does not corroborate his complaints; and (3) a diagnosis of diabetes does not establish that Mr. Clark actually became more impaired at the time of diagnosis.  Dkt. 19 at 6-7.  The Commissioner also notes that Ninth Circuit authority indicates that it is

REPORT AND RECOMMENDATION - 3

"reasonable to disregard allegations of disabling impairments where, as here, a claimant stopped work for reasons other than his impairments."  Dkt. 19 at 6 (citing *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)).

*Bruton* does indicate that the context of a claimant's work history is relevant, such that if his or her last job ended for reasons not related to his or her impairments, this circumstance undermines the credibility of the claimant's subjective complaints.  268 F.3d at 828.  In that case, the claimant's alleged onset date was the same date that he was laid off for economic reasons, not impairment-related reasons.  268 F.3d at 826.  Other cases have distinguished *Bruton* in situations where the claimant's alleged onset date is more than a year after the claimant last worked and, in some cases, where the evidence shows that the claimant's condition worsened in the intervening time.  *See, e.g.*, *McGowan v. Astrue*, 2012 WL 5390337, at *5 (W.D. Wash. Oct. 17, 2012); *Smith v. Astrue*, 2012 WL 5269395, at *9 (D. Ariz. Oct. 24, 2012); *Shehan v. Astrue*, 2009 WL 2524573, at *3 (C.D. Cal. Aug. 17, 2009).

In this case, Mr. Clark's date of alleged onset of disability is the same day he was laid off from his most recent job for economic reasons.  *See* Tr. 49-50, 221, 247.  Though Mr. Clark has pointed to some equivocal evidence that could suggest that his conditions worsened at some point after he was laid off, none of the evidence cited by Mr. Clark necessarily establishes that his functionality decreased.  Given the timing of Mr. Clark's benefits application, the Court cannot find that the ALJ was unreasonable in inferring that because Mr. Clark worked up until the time of his disability application, and because that job ended for economic reasons instead of impairment-related reasons, his subjective complaints were less credible.

### 2.      Mr. Clark's Activities

The ALJ cited Mr. Clark's ability to shop, clean, manage his personal hygiene, attend

community college classes (studying business computers, bookkeeping, accounting, and data entry) as undermining his allegations. Tr. 25. The ALJ specifically noted that although Mr. Clark claimed to have problems typing due to arthritis and problems looking at a computer screen due to vision problems, he was nonetheless able to complete a course in business computing and receive a certificate. *Id.*

Mr. Clark contends that the ALJ erred in construing his coursework as inconsistent with his allegations regarding limitations in typing and viewing a computer screen, because it is unclear how much he actually used the computer. Dkt. 20 at 5. Given that Mr. Clark was studying business computers, bookkeeping, accounting, and data entry, it was reasonable for the ALJ to infer that Mr. Clark's alleged difficulties in keyboarding and viewing a computer screen were not as restricting as alleged.

### 3. Improvement/Lack of Symptomology Regarding Sleep Apnea and Diabetes

The ALJ cited evidence showing that Mr. Clark's sleep apnea improved with treatment, and that his diabetes did not cause vision-related problems, and inferred that his symptoms were not as severe as alleged. Tr. 26. The ALJ reasonably construed this evidence to demonstrate improvement or effective control of symptoms, which undermines his testimony regarding the severity of his symptoms. *See, e.g.*, *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Thus, because the ALJ provided a number of clear and convincing reasons to discount Mr. Clark's credibility, his adverse credibility determination should be affirmed.

### B. The ALJ Erred in Assessing Mr. Clark's RFC

Mr. Clark argues that the ALJ erred in discounting the opinions of consultative examiners Jordan Firestone, M.D., and Gerald Cavanee, Ph.D, thereby failing to account for all of his

REPORT AND RECOMMENDATION - 5

limitations in the RFC assessment.  Tr. 26-27 (citing Tr. 480-84, 531-44).

### 1. Dr. Firestone

The ALJ provided a number of reasons to discount Dr. Firestone's opinion, specifically the inconsistency between the medical evidence and Dr. Firestone's opinions regarding Mr. Clark's exertional capabilities and vibration/temperature restrictions, and the lack of support and expertise regarding the impact of Mr. Clark's mental limitations.  Tr. 26.  Mr. Clark challenges the ALJ's first basis on two grounds: (1) the ALJ did not explicitly specify what evidence is inconsistent with Dr. Firestone's opinions regarding exertional level and vibration/temperature restrictions, and (2) the ALJ did not explicitly address Dr. Firestone's restrictions regarding standing and a need to change positions, and thus should have included them in the RFC.  Dkt. 20 at 7-9.

To Mr. Clark's first point, the Commissioner directs the Court's attention to the portion of the ALJ's decision where he summarized Dr. Firestone's findings.  *See* Tr. 25.  According to the Commissioner, these findings provide a specific and legitimate reason to discount Dr. Firestone's opinion: Mr. Clark's gait is stable (although slightly wide-based), he can rise on his toes and heels, he has normal joint range of motion, and intact strength, muscle bulk, tone, and sensation in all extremities.   These findings could be relevant to Mr. Clark's ability to lift/carry, but it is not clear how they undermine the vibration or temperature restrictions, nor do they have any apparent bearing on Mr. Clark's ability to stand or his need to change positions hourly. Thus, the ALJ's summary of Dr. Firestone's findings does not adequately specify why most of Dr. Firestone's opinions are rejected.  On remand, the ALJ shall address explicitly address those restrictions and either account for Dr. Firestone's opinions as to those restrictions in the RFC assessment or provide specific and legitimate reasons to reject them.

REPORT AND RECOMMENDATION - 6

### 2. Dr. Cavanee

The ALJ assigned some weight to Dr. Cavanee's January 2012 opinion, but rejected his opinion that Mr. Clark's impairments combine to render him unable to work, citing normal mental status exam ("MSE") findings. Tr. 26-27. Although Mr. Clark points to other, uncited portions of the MSE findings that are abnormal (Dkt. 20 at 9-10), he has not established that the ALJ was unreasonable in construing Mr. Clark's 29/30 MSE score as inconsistent with Dr. Cavanee's overall opinion. *See* Tr. 535-56.

### C.   Any Error at Steps Four and Five may be Cured on Remand

Mr. Clark argues that the ALJ erred in finding that he could perform the jobs of store's laborer and production line solderer, because both of those jobs require frequent depth perception, and the ALJ limited him to only occasional depth perception. Dkt. 16 at 17-18. The Commissioner does not dispute that the ALJ's RFC assessment would preclude performance of those jobs, but argues that the ALJ's finding that Mr. Clark could also perform the jobs of housekeeper and diet clerk cured the error. Dkt. 19 at 14-15.

At this point, the Court cannot evaluate whether the Commissioner's argument would prevail, because the ALJ will be reassessing Mr. Clark's RFC on remand and it cannot be determined whether that reformulated RFC would be consistent with the requirements of housekeeper or diet clerk. Accordingly, the Court defers ruling as to whether the step-four error is cured at step five.

### D.   Mr. Clark's Post-Hearing Request was Untimely

After the administrative hearing, the ALJ determined that he needed more medical information about Mr. Clark's visual capabilities, and ordered him to attend a consultative examination with an ophthalmologist, Richard E. Bensinger, M.D. Tr. 299. Mr. Clark did so,

1  and Dr. Bensinger reported on various aspects of Mr. Clark's eyesight, and found him to have no
2  changes caused by diabetes.  Tr. 618-20.  The ALJ sent Dr. Bensinger's report to Mr. Clark's
3  counsel, with a letter offering the opportunity to submit written interrogatories to Dr. Bensinger
4  and/or to request a supplemental hearing.  Tr. 212.  The ALJ's letter indicated that either request
5  must be received within ten days of Mr. Clark's receipt of the letter, and that the ALJ retains
6  discretion to deny the requests if he determines that granting them would be unnecessary.  Tr.
7  212-13.  Mr. Clark did not submit his requests until the eleventh day after receipt (Tr. 215-17),
8  and the ALJ entered his decision without apparently considering Mr. Clark's supplemental
9  materials or requests.
10         Mr. Clark argues that his request was not untimely, because it was submitted within the
11 15-day window allowed by Social Security regulations.  Dkt. 20 at 10.  Mr. Clark cites no
12 specific authority[4] applying a 15-day rule to all responses submitted to the Commissioner, nor
13 does the Administration's internal procedures manual suggest that such a window applies to
14 responses to post-hearing proffers.  *See* Hearings, Appeals and Litigation Law Manual
15 ("HALLEX") I-2-7-30, *available at* http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html
16 (last accessed October 1, 2013).  In fact, HALLEX does not even mandate that any particular
17 response period be provided; it simply indicates that the proffer letter must give the claimant "a
18 time limit" to respond.  HALLEX I-2-7-30(B).
19         The wording of the ALJ's letter clearly indicates that a response was due within ten days
20 of Mr. Clark's counsel's receipt of the proffer letter, which was admittedly eleven days before

---

[4] It may be Mr. Clark had in mind 20 C.F.R. § 422.210(c), which indicates that the 60-day time period in which to file a civil action after receiving the Commissioner's "final decision" starts running five days after the decision date to allow for mailing time, because receipt is presumed to occur after five days unless it is shown otherwise.  However, this regulation does not indicate that a five-day grace period is added to any and every Social Security-related deadline.

REPORT AND RECOMMENDATION - 8

the response was submitted.  *Compare* Tr. 212-23 *with* Tr. 215 (acknowledging that the ALJ's letter was received on a date eleven days earlier).  Mr. Clark has failed to show that the ALJ's notice or 10-day time period did not provide a full opportunity to be heard, and thus he has failed to show that the ALJ erred in failing to consider his untimely request.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should reevaluate Dr. Firestone's opinion, specifically his opinions regarding Mr. Clark's ability to stand, his need to change positions, and his limitations regarding temperature and vibration, and reassess Mr. Clark's RFC and the step-four and -five findings in light of that opinion.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed no later than **October 16, 2013**.  If no objections are filed, the matter should be noted as ready for the Court's consideration on **October 18, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 2nd day of October, 2013.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9

REPORT AND RECOMMENDATION - 10